UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKANSKA USA BUILDING, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ZURICH AMERICAN INSURANCE ) <br> COMPANY, ) <br> Defendant. ) <br> ) | Civil Action No. 1:24-cv-12607-MJJ |

**MEMORANDUM OF DECISION**

May 19, 2025

JOUN, D.J.

On July 26, 2024, Skanska USA Building, Inc., ("Skanska") brought suit in Middlesex Superior Court against Zurich American Insurance Company ("Zurich") seeking Declaratory Judgment as to Zurich's coverage obligations and alleging Breach of Contract and Breach of Contract Third-Party Beneficiary. [Doc. No. 1-1 at 17–19]. On October 11, 2024, Zurich filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C § 1446. [Doc. No. 1]. On October 18, 2024, Zurich filed a Motion to Dismiss. [Doc. No. 4]. For the reasons below, Zurich's Motion to Dismiss is DENIED.

**I.    BACKGROUND**

The following facts are drawn from the Complaint and taken as true for purposes of evaluating Zurich's Motion to Dismiss. *See Ruivo v. Wells Fargo Bank*, 766 F.3d 87, 90 (1st Cir. 2014). Certain facts are taken from the Completed Value Builders Risk Policy, [Doc. No. 1-1 at 26-74], attached to the Complaint. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st

Cir. 2013) (A court "may also rely on any documents attached to the complaint or incorporated by reference therein.").

## A. The Contract

On July 5, 2018, Skanska entered into an "Owner-Construction Manager Agreement" ("Construction Contract") with the Town of Belmont pursuant to which Skanska would serve as Construction Manager at Risk for the construction of a new high school and middle school in Belmont, Massachusetts. [Doc. No. 1-1 at 11, ¶ 5]. Skanska's scope of work included, in relevant part, the construction of a geothermal HVAC system consisting of three groups of "vaults"—with each vault including nine to ten series of wells—in a closed-loop system filled with water-glycerol mixture. [*Id.* at 11, ¶ 6].

## B. The Policy

Zurich issued a Completed Value Builders Risk Policy ("the Policy") to the insured "Town of Belmont and The Belmont High School Building Committee c/o Town Administrator." [*Id*. at 8, ¶ 5; *id*. at 26]. The "Coverage" section of the Policy states that Zurich "will pay for direct physical loss or damage to 'builders risk property' caused by a 'covered loss' . . ." [*Id*. at 41]. The Policy defines "Builders Risk Property" as:

> (a) Property under construction;
> (b) Landscaping materials, and
> (c) Temporary Works,
>
> owned by the Insured or owned by others which are in the Insured's care, custody, or control, or that the Insured is contractually responsible for and are included in the "insured project."

[*Id.* at 52–53]. A "Covered cause of loss" is defined by the Policy as "direct physical loss or damage, not otherwise excluded or limited in this Policy, which actually occurs during the Policy term." [*Id.* at 53].

Regarding whom, or what entities are afforded coverage, the Policy contains a clause that states:

> When any Named Insured is party to a written contract or agreement that requires owners, contractors, subcontractors, tenants at the "project site", architects, engineers, manufacturers, suppliers or any other legal entity to be identified as an additional insured for an "insured project", this Policy includes the legal entity as an additional insured, and then only as to their respective financial interest in the Covered Property.

[*Id.* at 26]. The Policy also includes a section titled "Less Restrictive Cost of Correcting or Making Good Exclusion" ("COMG"), which states that coverage is available for certain defective design and workmanship subject to a $250,000 deductible per "any one occurrence." [*Id.* at 67]. The Policy defines "Occurrence" as "all loss or damage that is attributed directly or indirectly to one cause or a series of similar and related causes." [*Id.* at 55].

Finally, there is a provision describing the allotted time to bring a cause of action against Zurich, which states:

> No one may bring a legal action against the Company under this Policy unless:
>
> 1. All of the terms have been fully complied with; and
> 2. The action is brought within 2 years after the date of which the loss or damage ***commenced.***

[*Id.* at 33–34] (emphasis added).

## C. The Claim

Skanska began its work on the project in or about the fall of 2019. [*Id.* at 11, ¶ 6]. On or about July 7, 2021, a coupling on the piping of the building-side loop failed and two pipes that it

3

secured became separated. [*Id*. at 13, ¶ 17]. The separation caused the release of a water-glycol mixture into the mechanical room of the new school project, allowing an unidentified amount of air to became entrapped into the closed-loop system. [*Id*.]. This caused periodic pressure drops, sometimes called burping as the trapped air moved through the system. [*Id*. at 13, ¶ 18]. After the failed couplings were replaced, low pressure alarms sounded intermittently, which required refilling of the water-glycol mixture to the system. [*Id*. at 13, ¶ 20].

In March of 2023, the project team performed a system flush in response to the frequent pressure drops. [*Id*. at 13, ¶ 21]. However, while performing the flush, it was discovered that well series C3.6 and C3.9 had been damaged and corrected by the responsible subcontractor without request for coverage of such corrective work. [*Id*. at 13, ¶ 22]. Upon completion, the HVAC system was placed back in service with the belief that additional steps would be required to fully remove the air from the system. [*Id*. at 10, ¶ 23].

The Town of Belmont, on behalf of Skanska, submitted a claim to Zurich under the Policy for $600,735 for added costs incurred by Skanska and the associated physical loss and damage caused by the coupling failure and air entrapment. [*Id*. at 14, ¶ 24]. In a May 12, 2023 document, Skanska provided to Zurich accounting records and an itemization and general explanation of the costs incurred related to the coupling failure and air entrapment issues. [*Id.* at 14, ¶¶ 25–26]. In turn, Zurich retained an engineer to investigate the claim and inspect the project. [*Id*. at 14, ¶ 28].

On or about May 2023, Zurich's engineer undertook an inspection. [*Id*. at 15, ¶ 29]. Rather than identifying the coupling failure as the basis for air entrapment, the engineer's report (the "Report") pointed to well leaks at series C3.6 and C3.9. [*Id*. at 15, ¶¶ 30, 32]. The Report

4

concluded that $241,925 worth of the reported costs were attributed to the well leaks, and not the coupling failure. [*Id*. at 15, ¶ 32–33].

Zurich issued its coverage opinion on February 13, 2024, which stated that the claim was subject to the COMG provision of the Policy, and therefore, the cost to replace or repair the damaged coupling was not covered. [*Id*. at 15, 16 at ¶ 37]. Additionally, Zurich stated that the cost to rectify the improper pipe casings at series C3.6 and C3.9, and the cost of refilling the water/glycol were also not covered.[1] [*Id.*]. However, Zurich acknowledged there was some coverage available under the COMG resulting from improper installation, including water/glycol cleanup and repairs to the damaged maintenance room. [*Id.* at 16, ¶ 38].

According to Zurich, there were two "occurrences," the coupling failure and the well leak, of which each were subject to a $250,000 deductible under the COMG provision. [*Id.* at 16, ¶ 39]. Based on Zurich's analysis, $91,045 of costs were associated with the coupling failure and $241,925 of the costs were associated with the well leaks. [*Id.* at 16, ¶ 40]. Zurich took the position that neither of these occurrences had costs more than the applicable deductible of $250,000. [*Id.* at 16, ¶ 40]. Skanska took the position that Zurich has yet to consider $260,000 in labor costs as part of the claim, and that Zurich's liability to pay the claim is subject to only one deductible. [*Id.* at 16, ¶¶ 41–42].

## II.   LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim, a court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is

---

[1] The Complaint alleges that the refilling of the water/glycol was not covered because, according to Zurich, this is not "Builders Risk Property" which is defined as "(a) property under construction; (b) landscaping materials; and (c) temporary works [that are] owned by the Insured or owned by others which are in the Insured's care, custody, or control or that the Insured is contractually responsible for and are included in the 'insured' project." [Doc. No. 1-1 at 49].

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, courts "ignore[] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[] the complaint's well-pled (i.e. non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

### III.   ANALYSIS

Zurich contends that the present action is time-barred, as the date of filing—July 26, 2024—is more than two years after the date of loss alleged in the Complaint—July 7, 2021. [Doc. No. 5 at 1]. In support, Zurich points to the Policy provision limiting actions to "two years after the date of which the loss or damage commenced" and to M.G.L. c. 175, § 99 ("§ 99"). [Doc. No. 9 at 2]. In contrast, Skanska argues that the claim is not time barred and the Policy provision is void pursuant to M.G.L. c. 175, § 22 ("§ 22"). [Doc No. 8 at 6].

#### A.   Application of M.G.L. c. 175, § 99

"In Massachusetts, § 99 sets out a standard form and content to include in property policies insuring against loss or damage by fire." *Meadows at Mainstone Farm Condo. Tr. v. Strathmore Ins. Co.*, No. 16-cv-12546, 2018 WL 4696745 at *7 (D. Mass. Sept. 28, 2018). Zurich points to the substantive standard form language, which includes a provision outlining a two-year limitation period:

> No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred[.]

M.G.L. c. 175, § 99.

As an initial matter, I first must determine if the policy issued by Zurich is governed by § 99. The statute, originally designed to protect against fire and lightning, was broadened by Mass. Gen. Laws ch. 175, § 54E[2] to govern policies that combined fire insurance with other types of coverage. *Faustman v. Commerce Ins. Co.*, WL 1473148, at *1, *2-4 (Mass. Super. Ct. July 5, 2000). Courts further broadened the statute to govern "all risk"[3] policies in the context of homeowners or commercial property insurance. *See Riverdale Mills Corp. v. Fireman's Fund Ins. Co.*, 123 F. Supp. 2d 37, 39 (D. Mass. 2000) ("Property insurance policies written on risks in Massachusetts must adhere to a standard form set forth in M.G.L. c. 175, § 99.")

Here, I find that the Policy issued by Zurich is not governed by § 99. Although the policy is an "all risk" policy, it is a "builder's risk" policy which differs from those issued strictly for the protection of residential or commercial property. *See PeoplesBank v. Certain Underwriters at Lloyd's, London*, 105 Mass. App. Ct. 476, 477 n. 2 (2025). A builder's risk policy "covers a project in construction before it becomes insurable as a building." *Id.* "After construction is complete and a certificate of occupancy is issued, insurance coverage would be obtained through a standard commercial policy." *Id.* Courts in other jurisdictions have also distinguished builder's

---

[2] Mass. Gen. Laws ch. 175, § 54E states in pertinent part:

> Any company authorized to insure against loss or damage by fire [...] may [...] insure against loss or damage to, or the legal liability of the insured with respect to, commercial property [...] provided, that insurance against loss or damage by perils other than the peril of fire may be written only when insurance against the peril of fire is written in the same policy and on forms which have been submitted to and approved by the commissioner. (emphasis added).

[3] The Massachusetts Appeals Court has loosely defined an "all risk" policy as one that "insures the structure for all risks of physical loss except for certain exclusions [. . .]" *See Talbot v. Horace Mann Ins. Co.*, 19 Mass. App. Ct. 93, 95 n. 3 (1984); *see also Audubon Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am., Inc.*, 82 Mass. App. Ct. 461, 467 (2012)

risk policies from more traditional insurance. *See Ellmex Const. Co. v. Republic Ins. Co.*, 202 N.J. Super. 195, 203 (App. Div. 1985) ("[b]uilder's risk policy should not be interpreted as are policies insuring ordinary homeowners."). Zurich points to no authority, nor have I found any, that places a builders-risk policy in the realm of § 99.

To reinforce the conclusion that the Policy is not governed by § 99, I look no further than at the actual Policy itself. [Doc. 1-1 at 25–74]. Section 99 requires policies to use the standard form set forth in the statute. *See, e.g.*, *Riverdale Mills Corp,* 123 F. Supp. 2d at 39; *Meadows at Mainstone Farm Condo. Tr. v. Strathmore Ins. Co.*, 2018 WL 4696745, at *7 (D. Mass. Sept. 28, 2018); *Aquino v. United Prop. & Cas. Co.*, 483 Mass. 820, 826 (2020) ("[t]he standard fire policy statute requires the use of standard forms."). At minimum, some Courts have required the policy language to closely "track" § 99. *See, e.g., Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 155 n. 2 (1st Cir. 2000); *Dimaio Fam. Pizza & Luncheonette, Inc. v. Charter Oak Fire Ins. Co.*, 349 F. Supp. 2d 128, 131 (D. Mass. 2004); *Wilson v. Merrimack Mut. Fire Ins. Co.*, 66 Mass. App. Ct. 1102 n. 1 (2006). However, the Zurich policy, although it contains some provisions similar to § 99, neither closely tracks the policy nor is written in the standard for set forth in § 99. *Compare* M.G.L. c. 175, § 99, Twelfth, *with* [Doc. No. 1-1, at 21-74].

B. **Application of M.G.L. c. 175, § 22.**

Skanska argues the limitation period is void pursuant to § 22, which states in pertinent part:

> No company and no officer or agent thereof shall make, issue or deliver any policy of insurance or any annuity or pure endowment contract containing any condition, stipulation or agreement [...] limiting the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues [....] Any such condition, stipulation or agreement shall be void.

Having determined that the policy is not governed by § 99, I now turn to when the claim accrued for purposes of § 22. "The 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); Black's Law Dictionary 23 (9th ed. 2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right"). "Under Massachusetts law, which applies in this diversity case, contract claims generally accrue at breach." *Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004). Thus, Skanska's claim accrued on February 13, 2024, when Zurich denied Skanska's claim request.

The aim of § 22 is to limit "the ability of insurers to shorten the time period in which to bring claims." *Brown v. Sav. Bank Life Ins. Co.*, 93 Mass. App. Ct. 572, 583 (2018). In essence, § 22 prohibits a policy's suit limitations period "to run from the happening of the loss." *Barton v. Auto. Ins. Co. of Hartford, Conn.*, 309 Mass. 128, 130 (1941). However, the Massachusetts Supreme Judicial Court has held that that § 22 only applies to "nonstatutory limitations, that is, to those settled upon solely by the parties to the insurance policy, as opposed to those directed by the Legislature." *Goldsmith v. Reliance Ins. Co.*, 353 Mass. 99, 102 (1967). Because I have already determined the Policy is not governed by § 99, I find the suit limitations clause in the Policy to be of the "nonstatutory" kind announced in *Goldsmith* rather than directed by the legislature.

C. <u>**Validity of the Limitations Clause**</u>

The Policy's limitations clause determines legal action against Zurich must be brought "within 2 years after the date of which the loss or damage commenced." [Doc. 1-1 at 33–34]. The Policy essentially shortened the Massachusetts six-year statute of limitations for breach of contract claims, to two years. M.G.L. c. 260, § 2. "Massachusetts law permits contractually

shortened limitations periods so long as they are 'reasonable' and 'not contrary to other statutory provisions or to public policy.' *Machado v. System4 LLC*, 471 Mass. 204, 219 (2015) (citing *Creative Playthings Franchising, Corp. v. Reiser*, 463 Mass. 758, 760–761 (2012)). Even so, Massachusetts prohibits insurers from shortening limitations periods to less than two years from the time the cause of action accrues. *Shepardson v. Am. Fam. Life Assurance Co. of Columbus*, 525 F. Supp. 3d 210, 215 (D. Mass. 2021); Mass. Gen. Laws ch. 175, § 22. Accordingly, since the Policy's suit limitation provision is "nonstatutory, and pursuant to the controlling authority, I find that the suit limitations clause in the Policy is void and unenforceable.

## IV.   CONCLUSION

For the foregoing reasons, Zurich's Motion to Dismiss is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Myong J. Joun</u><br>
United States District Judge